## CARTER v. HARRELL.

### No. 13966.

Court of Civil Appeals of Texas.
Fort Worth.

March 3, 1939.

Rehearing Denied March 24, 1939.

E. B. Hendricks, J. E. Warren, and Jack Carter, all of Fort Worth, for appellant.

B. Y. Cummings, Rawlings & Sayers, and Nelson Scurlock, all of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

This suit was instituted in the County Court at Law No. 1 of Tarrant County, by Jack Carter, against T. J. Harrell, to recover from the defendant the right to the office of Councilman of the City of Fort Worth, place No. 2, and for personal judgment for the sum of $350, collected by the defendant as official salary during the time he assumed to fill that office.

The trial court sustained a general demurrer to the petition and dismissed the case, after plaintiff had declined to amend; and plaintiff has appealed.

Following is a summary of the material facts alleged in the petition, which, as against the demurrer, must be accepted as true.

On April 6th, 1937, W. J. Hammond was duly elected to Place 2 on the City Council of the City of Fort Worth, for the regular term of two years, from that date, expiring April 6th, 1939.

Following are provisions of the Charter adopted under the Home Rule provisions of the State Constitution:

"The powers of the City Government shall be vested in a body to be known as the City Council, composed of nine members. Their term of office, after the first election under this Charter shall be for a period of four years and until the election and qualification of their successors; provided, that at the first election after the adoption of this Charter there shall be elected a full Council, four of whom shall hold office for a period of only two years, and the remaining five for the full period of four years. The Council shall determine by lot which members of the said body shall serve for the two-year and four-year periods respectively. Two years after the first election there shall be held another election, at which the successors to the four two-year Councilmen shall be chosen. Thereafter elections shall be held every

two years to elect members of the City Council whose terms are expiring. The members of the City Council shall be elected by the qualified voters of the entire City."

"Vacancies in the City Council, where the same do not exceed four at any one time, shall be filled by a vote of five members of the Council, and the persons selected to fill such vacancies shall serve only until the next general city election, when said vacancies shall be filled as in the case of an original election, but only for the unexpired period of the terms of the Councilmen whose offices are being filled."

"Any Councilman of this City may be recalled and removed from office by the electors qualified to vote for a successor of such encumbent as herein provided. The procedure to remove Councilmen shall be as follows:

"A petition signed by the qualified voters entitled to vote for a successor to the Councilman sought to be removed, equal in number to at least twenty per centum of the entire number of persons entitled to vote in said City at said time, demanding the recall of said Councilman shall be filed with the City Secretary, provided that such petition shall contain a general statement of the grounds for which the removal is sought. The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. One of the signers to each of such papers shall make oath before an officer competent to administer oaths that each signature is that of the person whose name it purports to be. Within ten days from the filing of such petition, the City Secretary shall examine the same and from the list of qualified voters ascertain whether or not said petition is signed by the requisite number of qualified voters, and, if necessary, the Council shall allow him extra help for that purpose, and he shall attach to said petition a certificate showing the result of such examination. If by the Secretary's certificate the petition is shown to be insufficient it may be amended within ten days from the date of said certificate. The Secretary shall, within ten days after such amendment is filed, in case one is filed with him, make like examination of the said amended petition, and if his certificate shall show same to be insufficient, it shall be returned to the person filing same without prejudice, however, to the filing of a new

petition based upon new and different grounds, but not upon the same grounds.

"If the petition be found sufficient, the Secretary shall submit the same to the City Council, without delay, and the City Council, in the event the Councilman fails to resign, shall order and fix a date for holding the said election not less than thirty nor more than forty days from the date of the Secretary's certificate to the Council that a sufficient petition is filed provided that, if an election is to be held within the City for any other purpose within sixty days from the date of said certificate, then the said recall election shall be held on the same day. If the Councilman in question resigns, no election shall be necessary and the vacancy shall be filled by the Council as in other cases of vacancies.

"The City Council shall make or cause to be made publication of notice and provide for holding such election, and the same shall be conducted, returned and the result thereof declared in all respects as other city elections. Any officer so elected shall hold office only during the unexpired term of his predecessor. Any person sought to be removed may be a candidate to succeed himself and, unless he requests otherwise in writing, the Secretary shall place his name on the official ballot without nomination. The names of other candidates for such position shall be placed on the official ballot by petition in the same manner as provided for in other portions of this Charter for the nomination of Councilmen for a place on the ballot. At such election the candidate receiving the highest number of votes, according to the rules regulating the election of Councilmen as set forth in Chapter III of this Charter, shall be declared elected. At such election, if some other person than the incumbent, receives the highest number of votes, the incumbent shall thereupon be deemed removed from the office upon the qualification of his successor. In case the party who receives the highest number of votes at said election should fail to qualify within ten days after receiving notification of his election, the office shall then become vacant. If the incumbent receives the highest number of votes at such election, he shall continue in office and shall not be subject to any other recall for any grounds existing prior to said election.

"Should the Council fail or refuse to order an election as herein provided for the recall of a Councilman, when all the re-

quirements for such election have been complied with by the petitioning citizens, in conformity with this Chapter of the Charter, then it shall be the duty of any one of the District Judges of Tarrant County, Texas, upon proper application being made therefor, to order such election and to enforce the carrying into effect of the provisions of this Chapter of the Charter."

On May 26th, 1938, a petition for an election to recall Hammond as Councilman was filed with the City Council, with the signatures of 9693 persons as qualified voters of the City, which was more than twenty per cent of the qualified voters of the City, as fixed by the Charter for such a petition. The Council then ordered the City Secretary to investigate and report whether the signers of the petition were qualified voters. Later the Secretary filed his report to the effect that the names signed to the petition were of qualified voters; that some of the signatures appeared to be forgeries, but he had not undertaken an investigation of those irregularities. In view of that report of the Secretary, the council refused to order the recall election.

By reason of such refusal, the petitioners then applied to the Hon. A. J. Power, District Judge of the 96th District Court, for an order requiring the election to be held, under provisions of the Charter, noted above.

On June 20th, 1938, Judge Power, as Judge of the district court of Tarrant County, heard the petition for the recall election, in due course, and after such hearing announced that he would take the matter under advisement and would announce his decision at 5:00 o'clock P. M. on the following day, to-wit, June 21st, 1938. At the hour of 2:00 o'clock P. M. of that day, Hammond filed with the City Secretary his resignation of the office of member of the City Council for Place No. 2. At 5:00 o'clock P. M. of the same day, the time theretofore appointed by Judge Power for a ruling on the petition, he entered an order granting the petition and ordering the election to be held on July 23rd, 1938.

On July 23rd, the election was held, as ordered. At that election, the name of T. J. Harrell was placed on the ticket as a candidate for the office; and a sufficient number of ballots were cast to recall Hammond, and also to elect T. J. Harrell to fill the vacancy. Ever since the election, Harrell has filled the office and has been recog-

nized by the Council as lawful holder thereof.

On July 6th, 1938, which was approximately 14 days after Judge Power had ordered the election to be held, the City Council entered an order appointing Jack Carter to fill the office theretofore held by Hammond, for the remainder of his official term, ending April 4th, 1939, and on the same date Carter filed with the council the oath of office required by the City Charter.

There is no allegation in the petition in this suit that Hammond's resignation had ever been brought to the attention of the Council and accepted by it, until June 23rd, 1938. Nor is there any allegation in the petition that Hammond's resignation was brought to the attention of Judge Power at 5:00 o'clock on June 21st, 1938, when he ordered the election.

 It is our conclusion that the County Court was without jurisdiction to try the case, which was of itself sufficient ground for sustaining the general demurrer. That was the specific holding of our Supreme Court, under like conditions, in Dean v. State, 88 Tex. 290, 294, 30 S.W. 1047, 31 S.W. 185. In the second opinion on rehearing, by Chief Justice Gaines, it was pointed out that the proceeding was in the nature of a writ of quo warranto, to try title to an office; that Sect. 16 of Art. 5 of the Constitution did not confer jurisdiction upon the County Court. Further, that the Statute vesting in the County Court original jurisdiction of suits in which the amount in controversy is $200 or more, and not in excess of $1,000, was not applicable; but that the District Court alone was vested with jurisdiction of such proceeding.

In support of his claim of jurisdiction in the County Court to determine this controversy, appellant relies chiefly on the decision of the Galveston Court of Civil Appeals, in Harris v. Williamson, 45 Tex.Civ. App. 65, 99 S.W. 713. That suit was instituted in the District Court for the recovery of an office and the fees and emoluments thereof, alleged to be of the value of $400. Judgment for plaintiff therein was reversed because of the conclusion reached that the District Court was without jurisdiction to try the case; and under the Statute exclusive jurisdiction was vested in the County Court of suits where the amount in controversy is not less than $200 nor more than $500.

That decision was in direct conflict with the decision in Dean v. State, supra, nor did it ever reach the Supreme Court by application for writ of error. We therefore follow the decision in the Dean case, as the controlling authority in this case.

The general demurrer also presents the question of the sufficiency of the petition for the relief prayed for on the merits of the suit. And if we are in error in our foregoing conclusion that the Court was without jurisdiction of the suit, it is our further conclusion that the petition was insufficient to show right of recovery on the merits. By express provisions of the Charter, at a recall election the qualified voters of the City have the unqualified right to fill the vacancy by an election, the same as at a regular biennial election for members of the City Council, and at such election the door is open for all qualified candidates for the vacancy. It did not lie in the power of the City Council to deprive the qualified voters of that Charter right by appointing plaintiff to fill the vacancy, after Judge Power had acquired jurisdiction of the petition for the recall election, signed by the requisite number of qualified voters, and after he had ordered the election to be held.

For the reasons stated, the judgment of the trial court is affirmed.